## United States District Court for the Western District of Arkansas
## Hot Springs Division

**Heather S. Stainbrook**                                                                 **Plaintiff**

**v.**              **Case No. 6:21-cv-06042-SOH**

**Otto Beck d/b/a**
**New Vision Properties**                                                            **Defendant**

## Complaint

Plaintiff, Heather S. Stainbrook ("Ms. Stainbrook"), for her Complaint against Defendant, Otto Beck d/b/a New Vision Properties ("Mr. Beck"), states the following:

### Jurisdiction and Venue

1. This Court has subject matter jurisdiction over Ms. Stainbrook's claims pursuant to 28 U.S.C. § 1331 because they raise questions of federal law under the Fair Housing Act of 1968.

2. This Court has supplemental jurisdiction over Ms. Stainbrook's state law claims because they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

3. Mr. Beck resides in the State of Arkansas. 28 U.S.C. § 1391(b)(1).

4. The events giving rise to this Complaint occurred in Hot Springs, Arkansas. 28 U.S.C. § 1391(b)(2). Thus, venue is proper in the Hot Springs Division of the United States District Court for the Western District.

**Facts**

5. Ms. Stainbrook rented and resided in a dwelling located at 28 Doblez Circle, Hot Springs Village, Arkansas 71909 ("the Premises") for several years. She moved in sometime in 2014. She did not have a written lease.

6. Mr. Beck owned the property at that time and managed it.

7. In November 2018, Ms. Stainbrook resided there with a significant other, Jeffrey Clayton ("Mr. Clayton"), who is male. Ms. Stainbrook is female.

8. Mr. Clayton did odd jobs for Mr. Beck like yard work, staining a deck, and removing pests from a rental unit. They became friends.

9. Ms. Stainbrook petitioned for an order of protection against Mr. Clayton under the Arkansas Domestic Abuse Act[1]. On November 14, 2018, the Garland County Circuit Court issued a temporary order of protection against Mr. Clayton.[2] The temporary order of protection explicitly excluded Mr. Clayton from 28 Doblez Circle. The police removed Mr. Clayton from the property on November 14, 2018.

10. Once Mr. Clayton was removed from the property, Ms. Stainbrook informed Mr. Beck that she had an order of protection against Mr. Clayton because of domestic violence, and she intended to remain on the property. She offered to pay December and January rent in advance if necessary. She hung up believing everything was fine.

---

[1] Ark. Code Ann. §§ 9-15-101 *et seq*.

[2] *Stainbrook v. Clayton*, Garland Cnty. Cir. Ct. (No. 26DR-18-949).

11. Mr. Beck called her back about half an hour later and told Ms. Stainbrook that she should not remove Mr. Clayton's items from the property, that he would remove her from the property, and that he would continue to rent to Mr. Clayton.

12. On November 15, 2018, Mr. Beck came to the property and gave a Notice to Quit to Ms. Stainbrook's minor daughter. The Notice gave her 10 days to vacate and did not cite a reason for eviction.

13. Ms. Stainbrook informed him that the notice was invalid because he gave it to her minor daughter. Mr. Beck gave Ms. Stainbrook a nearly identical Notice to Quit on November 21, 2018. It did not cite a reason for eviction and gave her 10 days to vacate.

14. When Ms. Stainbrook did not vacate, Mr. Beck had her served with a failure to vacate citation under Arkansas's "criminal eviction" procedure.[3]

15. At plea and arraignment, Ms. Stainbrook pled not guilty.[4] She was still living at the residence, and the court scheduled a trial on January 10, 2019.

16. On December 13, 2018, the Garland County Circuit Court held a hearing on the order of protection petition. The Court made a finding of domestic abuse against Mr. Clayton and entered a final order of protection against him for one year. The final order of protection explicitly excluded Mr. Clayton from 28 Doblez Circle.

17. Faced with the prospect of criminal sanctions, Ms. Stainbrook moved out of 28 Doblez Circle at the end of December to 34 Orantes Place, incurring moving expenses having to put down a new security deposit and pet deposit.

---

[3] Ark. Code Ann. § 18-16-101.

[4] *State v. Stainbrook*, Garland Cnty. Dist. Ct. (No. HTS-18-9602).

18. The Garland County District Court did not assess any fine, because she had moved. It did, however, enter a No Contact order against Ms. Stainbrook on January 10, 2019. The Order restrained her from contacting 28 Doblez Circle.

19. The property at 34 Orantes Place was the only comparably priced property that she could find in her children's school district. The property was much smaller and had many issues including water damage from a flood, pests, pet odors and dander from previous tenants' pets, and a leaking, non-useable shower and toilet.

20. She lived there for several months. Her daughter has a severe allergy to dogs and was unable to stay in the home on 34 Orantes Place. She ended up spending most of her time at a friend's residence. This caused considerable strain on Ms. Stainbrook's relationship with her.

21. When Ms. Stainbrook withheld rent so that the landlord would fix the problems with the home, she was given another criminal failure to vacate citation.

22. She then rented another home, where she currently lives, for $950 per month plus utilities. She also paid a $950 security deposit to move in.

23. On January 17, 2021, Mr. Clayton filed a Motion to Amend the Order of Protection, so that he could reside at 28 Doblez Circle under a rent-to-own-contract. Mr. Clayton subsequently moved back to the residence.

24. On February 5, 2019, Ms. Stainbrook filed a timely, verified complaint with the United States Department of Housing and Urban Development ("HUD") and the Arkansas Fair Housing Commission ("AFHC"), alleging that Mr. Beck engaged in discriminatory practices against her based on her sex in violation of the federal Fair Housing Act and the Arkansas Fair Housing Act, codified at Ark. Code Ann. §§ 16-123-301 *et seq.*

25. On March 4, 2020, the AFHC determined that reasonable cause existed to believe that Mr. Beck discriminated against Ms. Stainbrook based on sex, pursuant to Ark. Code Ann. § 16-123-310(a)-(b), and issued a charge of discrimination.

26. On August 20, 2020, AFHC and Mr. Beck entered into a Consent Agreement as a final disposition of the matter. It contained signatures from three individuals: Mr. Beck, Mr. Beck's attorney, and the Chair for AFHC, Tonya Kendrix.

27. Ms. Stainbrook was not consulted before the Consent Agreement was signed. She did not approve of the Consent Agreement and did not sign it.

28. Filing an administrative complaint with HUD tolled the statute of limitations for her Fair Housing claims arising under federal and state law; thus, this Complaint is timely.[5]

### Count I: Violations of the Fair Housing Act of 1968, Codified at 42 U.S.C. § 3604 and 3617.

29. According to 42 U.S.C. § 3604(a), it is unlawful to make unavailable or deny "a dwelling to any person because of…sex."

30. Mr. Beck made the rental property unavailable to Ms. Stainbrook when he gave her a Notice to Vacate and when he pressed charges against her for failure to vacate. He did so on the basis of sex because he informed Ms. Stainbrook she would have to leave with her children within 24 hours of being informed of the order of protection, and he rented the property to her male abuser after he evicted her.

31. 42 U.S.C. § 3604(b) prevents discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of

---

[5] 42 U.S.C. § 3613(a)(1)(B).

services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

32. Mr. Beck intentionally discriminated against Ms. Stainbrook's privileges in the rental of her dwelling. He did so in a way severe enough to deprive Ms. Stainbrook of her right to use and enjoy her home.

33. Under 42 U.S.C. § 3617, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed…any right granted or protected by section 3603, 3604, 3605, or 3606" of the Fair Housing Act.

34. Mr. Beck acted with discriminatory intent when he retaliated against Ms. Stainbrook for filing an order of protection, which excluded Mr. Clayton from the premises, and violated § 3617 by interfering with Ms. Stainbrook because of her sex.

35. Additionally, Mr. Beck is liable for the damage Mr. Clayton caused because he failed to exercise his power to evict Mr. Clayton when he knew of the danger that he posed to Ms. Stainbrook. 24 C.F.R. § 100.7(a)(1)(iii) (a landlord is directly liable when it fails to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it).

36. Instead of evicting the perpetrator of domestic violence and sex discrimination, Mr. Beck evicted the aggrieved person, which contravenes the direct language of 24 C.F.R. § 100.7(a)(2) (stating that "prompt action to correct and end the discriminatory housing practice may not include any action that penalizes or harms the aggrieved person, such as eviction of the aggrieved person").

37. Ms. Stainbrook incurred actual and economic damages from Mr. Beck's violations of the Fair Housing Act, including the loss of her housing and moving expenses, in an amount to be determined at trial.

38. She is entitled to emotional distress damages in an amount to be determined at trial.

39. Additionally, because of the recklessness and malice of Defendant's behavior, she is entitled to punitive damages in an amount to be determined at trial, as well as attorney's fees and costs.

### Count II: Violation of the Arkansas Fair Housing Act, Codified at Ark. Code Ann. § 16-123-201 *et seq.*

40. The Arkansas Fair Housing Act is substantially similar to the federal Fair Housing Act. *See* Ark. Code Ann. § 16-123-203(b).

41. The Arkansas Fair Housing Act prohibits a landlord from "discriminat[ing] against a person in the terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection therewith." Thus, a violation of 42 U.S.C. § 3604(b) would also necessarily be a violation of Ark. Code Ann. § 16-123-204(a)(2).

42. The Arkansas Fair Housing Act provides that a person shall not threaten, intimidate, or interfere with persons in the enjoyment of their dwelling because of the race, color, national origin, sex, or familial status of such persons, or of visitors or associates of such persons. Ark. Code Ann. § 16-123-206(c). Thus, a violation of 42 U.S.C. § 3617 would also necessarily be a violation of Ark. Code Ann. § 16-123-206(c).

43. Defendant violated Ark. Code Ann. §§ 16-123-204(a)(2), -206(c) for the same reasons that he violated 42 U.S.C. §§ 3604(b), 3617. *See, supra*, ¶¶ 31-34.

44. Ms. Stainbrook is entitled to damages for her injuries (stated above in ¶¶ 37-39), as well as attorney's fees and costs pursuant to Ark. Code Ann. § 16-123-210.

### Count III: Violation of Ark. Code Ann. § 18-16-112(b)

45. According to Ark. Code Ann. § 18-16-112(b), "if a residential tenant … or a member of the tenant or applicant's household is a victim of domestic abuse as evidenced by a documented incident of domestic abuse" then "a landlord shall not terminate or fail to renew [the victim's] residential tenancy … or otherwise retaliate in the leasing of a residence because of the domestic abuse."

46. Mr. Beck violated Ark. Code Ann. § 18-16-112(b) when he evicted Ms. Stainbrook and allowed Mr. Dayton to remain as a tenant on the property.

47. Ms. Stainbrook is entitled to compensatory and punitive damages for Mr. Beck's this violation Ark. Code Ann. § 18-16-112(b).

### Count IV: Breach of the Covenant of Quiet Enjoyment

48. Arkansas law implies a covenant of quite enjoyment into every lease.

49. Mr. Beck breached Ms. Stainbrook's right to quiet enjoyment of her home when he evicted her for getting an order of protection against her significant other and co-tenant. Mr. Beck also breached her quiet enjoyment when he failed to take action to evict Mr. Clayton.

50. Defendant's actions prevented Ms. Stainbrook from fully enjoying her residence.

51. Ms. Stainbrook requests compensatory and punitive damages stemming from this breach.

## Count V: Abuse of Process

52. Mr. Beck caused the Garland County Prosecutor to initiate a failure to vacate criminal prosecution against Ms. Stainbrook.

53. The failure to vacate process is used to fine individuals who do not pay their rent. Mr. Beck used it to ensure Ms. Stainbrook's removal from the property when she had not failed to pay rent.

54. Mr. Beck willfully used the failure to vacate proceeding to remove her from the property after she informed him that she got an order of protection against Mr. Clayton. Mr. Beck wanted Ms. Stainbrook off the property so he could rent it to the man who abused her.

55. Because of the prosecution, she was coerced into leaving her residence. If she did not leave, she could be forced to pay a fine or, if she went near the property, she could be arrested.

56. She sustained compensatory and punitive damages in an amount to be determined at trial.

## Count VI: Malicious Prosecution

57. Mr. Beck caused the Garland County Prosecutor to initiate a criminal prosecution against Ms. Stainbrook.

58. The proceeding terminated with the Court issuing a No Contact Order, purporting to prevent Ms. Stainbrook from being within 100 yards of 28 Doblez Circle. If she went near the property, she could be arrested or a warrant could have issued for her arrest.

59. The failure to vacate statute requires that the tenant failed to pay rent. Ms. Stainbrook offered Mr. Beck her rent in advance. Instead of accepting it, he gave her a notice to vacate before she was delinquent on rent. Thus, he did not honestly and in good faith relay the facts to the prosecutor, and he did not have probable cause to request that the prosecutor initiate the proceeding.

60. Mr. Beck used the failure to vacate for the sinister purpose of removing a woman who received an order of protection against her significant other and co-tenant. He wanted Ms. Stainbrook off the property so that he could rent it to the man who abused her.

61. Because of the prosecution, she was coerced into leaving her residence. If she did not leave, she could be forced to pay a fine or, if she went near the property, she could be arrested or a warrant issued for her arrest.

62. She sustained compensatory and punitive damages in an amount to be determined at trial.

63. Ms. Stainbrook requests a jury trial on all claims and damages alleged in her Complaint.

**WHEREFORE**, Plaintiff requests that this Court find that Defendant, Mr. Beck, violated the Fair Housing Act of 1968, violated the Arkansas Fair Housing Act, violated Ark. Code Ann. § 18-16-112(b), breached the covenant of quiet enjoyment, committed abuse of process, and committed malicious prosecution; and award her all damages related to these claims, including attorney's fees and costs pursuant to U.S.C. § 3613(c), and any and all other just and proper relief.

Respectfully submitted,

/s/ Natalie E. Ramm

Natalie E. Ramm (AR 2019060)
Cameron Bowden (AR 2018099)
Jason Auer (AR 2011304)

Legal Aid of Arkansas
711 Towne Oaks Drive
Little Rock, Arkansas 72227
T: 870-972-9224 ext. 6319
F: 870-910-5562

*Attorneys for the Plaintiff*